<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CURTIS ALLEN, | : : : | |
| Plaintiff, | : : | Civil Action No. 14-3205-BRM-DEA |
| v. | : : : | |
| NATIONAL RAILROAD PASSENGER, CORP. (AMTRAK), MEYERS PARKING, INC. and CITY OF NEW YORK, | : : : : | |
| Defendants. | : : : | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following motions: (1) Defendant New Garden Garage, LLC i/p/a Meyers Parking, Inc.'s ("Meyers") motion for summary judgment dismissing the Complaint and all cross-claims (ECF No. 35); (2) Defendant City of New York's (the "City") motion for summary judgment dismissing all cross-claims (ECF No. 36); and (3) Defendant National Railroad Passenger Corporation's ("Amtrak") motion for summary judgment dismissing the Complaint and all cross-claims (ECF No. 37). All motions are opposed. (ECF Nos. 38 to 42, 44 to 46.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.

**I.     BACKGROUND[1]**

   **A.     FACTUAL BACKGROUND**

This action arises out of an alleged slip-and-fall incident that occurred on May 20, 2012. (ECF No. 1.) Plaintiff alleges that, on May 20, 2012, "he parked his assigned Amtrak truck in the

---
[1] The facts set forth in this Opinion are taken from Plaintiff's Complaint (ECF No. 1), the parties' briefs and related filings.

1

31st Street area designated by Amtrak for its trucks . . ., stepped out of the truck cab onto a broken curb/sidewalk controlled by Meyers and/or City of New York at which point Plaintiff's knee buckled and torque [sic] causing severe damage to the left leg, knee and related connective tissues." (*Id*. at ¶¶ 8-9.)

The incident which forms the basis of Plaintiff's Complaint allegedly occurred on 31st Street in New York City between Seventh Avenue and Eighth Avenue. (Meyers's Rule 56.1 Statement (ECF No. 35-1); Plaintiff's Deposition Transcript (ECF No. 35-7) at 24:25-25:2.) Meyers owns the building at 230 West 31st Street, New York, New York (the "Subject Building") in front of which Plaintiff allegedly fell. (City's Rule 56.1 Statement (ECF No. 36-3) at ¶ 3.)

At his deposition, Plaintiff testified that he was employed by Amtrak as a substation electrician and reported to work at Penn Station in New York. (ECF No. 35-1 at ¶ 4; ECF No. 35-7 at 12:21-25, 13:1-7.) On the date of the accident, Plaintiff commuted to work by driving his personal vehicle to the Sunnyside Yard in Queens, New York, where he switched into his assigned Amtrak truck. (ECF No. 35-7 at 24:13-16.) Plaintiff allegedly "conducted a job briefing and completed the required documentation before leaving" the Sunnyside Yard to report to Penn Station to get his tools. (ECF No. 44 at 3; ECF No. 35-7 at 24:22-25:5, 122:2-123:5.) Plaintiff drove from the Sunnyside Yard to Penn Station and parked the Amtrak truck on 31st Street in front of the Subject Building. (ECF No. 35-7 at 26:2-16; 33:6-9.) Plaintiff testified that both Amtrak and other authorized vehicles were specifically permitted to park on 31st Street, but the general public was not. (*Id*. at 26:2-27:2.) Although it is unclear from the record, Amtrak presumably obtained permission from some entity to park its vehicles on 31st. Street.

Plaintiff was stepping out of his parked Amtrak truck when his foot slipped on a metal strip along the curb in front of the Subject Building. (ECF No. 36-3 at ¶ 5; ECF No. 35-7 at 41:19-43:5.)

Plaintiff testified he did not look where he was stepping as he exited his truck, but saw the metal strip after his fall. (ECF No. 35-7 at 47:2-14.) The metal strip was not under water when Plaintiff fell; however, there was water on both the sidewalk and street sides of the metal strip and Plaintiff was able to take a photograph showing same. (ECF No. 35-1 at ¶ 11; ECF No. 35-7 at 46:22-47:14 and P-29.) Plaintiff admitted that his foot did not make contact with the concrete area of the sidewalk, but only contacted the metal strip of the curb. (ECF No. 35-7 at 52:4-14.) Plaintiff attributed the cause of his fall to "the wet condition and the breaking of the concrete" and indicated the concrete at issue was on the sidewalk side of the metal strip. (*Id*. at 51:23-52:52:3).

Several statements were taken at or around the time of Plaintiff's accident. On the date of the accident, while still at the hospital, Plaintiff filled out an incident report. (ECF No. 35-1 at ¶ 13; ECF No. 35-7 at 55:10 to 56:11.) The handwritten incident report states: "While stepping out of the six-man truck, my foot landed on a metal strip, causing my feet to slide, twisting my knee." (ECF No. 35-11; *see also* ECF No. 35-7 at 56:18-22.) Plaintiff testified that he also spoke with a claims representative, who transcribed his statement on April 1, 2013. (*Id.*; *see also* ECF No. 35-12.) The statement, marked as P-32 during Plaintiff's deposition, provides as follows: "When I stepped down my foot landed on a metal strip that runs along the curb. It runs along the nosing of the curb. That metal was also broken in places. When my foot landed on the metal my foot slid to the side and I fell forward onto the sidewalk." (ECF No. 35-12.) Plaintiff testified that the information contained in the claims representative's statement was accurate. (ECF No. 35-7 at 64:7-66:22.) Additionally, Plaintiff testified that he handwrote a statement on the date of the accident. (*Id*. at 107:12-18, 110:11.) Plaintiff's handwritten statement provides, in part, as follows: "I, Curtis Allen, was getting out of the six man pickup truck on 31st Street. As I stepped out of the

3

truck my foot landed on a metal stripping that was part of a broken sidewalk and in a puddle of water. My foot slid on this metal strip." (ECF No. 35-1 at ¶ 18; ECF No. 35-13.)

The design of the curb with a metal edge has been used for over 100 years and is standard in New York City. (*Id*. at Ex. C (Report of John Nawn, P.E.) at p. 22.) The City had no formal, notice of a defect in the curb in front of the Subject Building prior to Plaintiff's alleged fall in May 2012. (ECF No. 36-3 at ¶ 4; Declaration of Min Ye Chan (ECF No. 36-6) at ¶ 3; Declaration of Albert Roca (ECF No. 36-7) at ¶¶ 2-4.) However, the City did receive a 3-1-1 complaint, dated April 10, 2012 "for a broken sidewalk" at the Subject Building. (ECF No. 36-7 at ¶ 2.) "This complaint was closed under 'Property Owner Notified'." (*Id*.) The City asserts the DOT did not inspect the Subject Building as a result of the April 10, 2012 3-1-1 complaint "because as of that date, there was an open Notice of Violation number 22206 dated 2/17/2009, that had been issued to the property owner . . . related to a 3-1-1 complaint dated 1/12/2009, for a broken sidewalk." (*Id*. at ¶ 3.) The Notice of Violation issued to Meyers on February 17, 2009 still remains open and, as such, no inspection was performed and no new Notice of Violation was issued as a result of the April 10, 2012 3-1-1 complaint. (*Id*. at ¶ 4.) Further, the DOT searched its records and found no prior written notice of the complained-of condition. (ECF No. 36-6 at ¶ 2.)

Meyers's Chief Operating Officer, Michael Carolan, testified that Meyers is responsible for maintaining the sidewalk outside of the Subject Building. (ECF No. 35-1 at ¶¶ 20-22; ECF No. 35-14.) Mr. Carolan testified that it was his understanding that Meyers's maintenance responsibility extends up to the curb, but does not include the curb or the metal strip which runs along the curb. (ECF No. 35-14 at 15:7-20.) He further testified that the concrete flag portion of the sidewalk was the responsibility of the property owner (*i.e.*, Meyers) and that the curbing was the responsibility of the City and/or one of its agencies. (*Id*. at 23:25-24:7.) Generally, Mr. Carolan

4

testified, Meyers would repair the concrete flags in front of the Subject Building and the City would repair the curbing and metal stripping. (*Id*. at 126:7-127:4.) Mr. Carolan identified an incident in 2013 when the concrete flag in front of the Subject building collapsed. (*Id*. at 27:12-24.) Apparently Meyers did not perform this repair and Mr. Carolan believed it was performed by either ConEd or the New York DOT. (*Id*. at 45:6-19, 107:18-24.)

Plaintiff's proposed expert, Carl M. Berkowitz, Ph.D., PE, AICP, authored a Safety Report, dated January 28, 2016. (ECF No. 35-17.) Mr. Berkowitz contends Plaintiff "slipped-tripped on the broken sidewalk and then his foot dropped onto the street causing him to lose balance." (*Id*. at 4.) Mr. Berkowitz opined that Meyers: (1) failed to inspect their sidewalk and curb area (*id*. at 5); (2) "allowed an unsafe and defective sidewalk and curb condition in the area of 252 West 31st Street, Manhattan, NY"; (3) "failed to assess the broken sidewalk condition properly in order to eliminate a dangerous trip-slip and fall situation"; and (4) "failed to properly inspect, maintain, repair and eliminate the dangerous condition as per their duties under the administrative code of the City of New York," among other opinions. (*Id*. at 12.)

Meyers's expert, John Nawn, P.E., noted, however, that Mr. Berkowitz's account of Plaintiff's incident was inconsistent with Plaintiff's deposition testimony, as there was no testimony about contacting a broken sidewalk, or any sidewalk, just prior to his fall. (ECF No. 35-1 at ¶ 41; ECF No. 35-18 at 4.) Mr. Nawn explained that, under Section 19-101 of the New York City Administrative Code, the sidewalk, which is maintained by the property owner is defined as "that portion of a street between the curb lines or the lateral lines of a roadway and the adjacent property lines but not including the curb, intended for the use of pedestrians." (ECF No. 35-18 at 5.) In addition, Mr. Nawn noted that the New York City DOT standards for steel faced concrete curb required the top of the steel to be flush with the top of the concrete curb. (*Id*. at 11.) Mr. Nawn

5

also pointed out that the metal edge or metal nosing for concrete curbs was first patented in 1907 and has been used in New York City for over 100 years and is a standard DOT detail. (*Id.* at 22.) Ultimately, Mr. Nawn opined that Meyers was not responsible for maintaining the metal edging of the curb in front of the Subject Building. (*Id.* at 23.)

**B.     PROCEDURAL BACKGROUND**

Plaintiff commenced this action on May 19, 2014 against the City, Meyers, and Amtrak. (ECF No. 1.) The City filed its Answer on June 24, 2014. (ECF No. 3.) Later the same day, the City filed an Amended Answer and Cross-Claim for contribution and indemnification against all defendants. (ECF No. 7.) Meyers also filed an Answer and Cross-Claims for contribution and indemnification against the City and Amtrak on June 24, 2014. (ECF No. 4.) On August 6, 2014, Amtrak filed an Answer and Cross-Claims against Meyers for contribution and indemnification. (ECF No. 13.)

On August 7, 2014, the City moved for summary judgment on Count III of Plaintiff's Complaint. (ECF No. 15.) Plaintiff and Meyers both opposed the City's motion for summary judgment (ECF Nos. 16, 18) and Meyers also moved for Leave to File a Third-Party Complaint against the City (ECF No. 17). On March 12, 2015, the Honorable Michael A. Shipp, U.S.D.J. entered an Order granting the City's motion for summary judgment, dismissing Plaintiff's complaint against the City for failure to file a Notice of Claim within 90 days, pursuant to General Municipal Law § 50-e(1)(a), and denying, as moot, Meyers's motion for leave. (ECF No. 21.)

On December 16, 2015, Amtrak filed a Motion to Amend/Correct its Answer to include a cross-claim against the City. (ECF No. 27.) The City opposed Amtrak's motion (ECF No. 28), which was granted by the Honorable Douglas E. Arpert, U.S.M.J., on March 4, 2016 (ECF No.

6

31).[2] Thereafter, on March 8, 2016, Amtrak filed its Amended Answer and Cross-Claims (ECF No. 32) and the City filed a reply to Amtrak's cross-claim on March 9, 2016 (ECF No. 33).

These motions followed.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that

---

[2] Magistrate Judge Arpert's March 4, 2016 Order makes clear that Amtrak's "motion [was] granted on procedural grounds alone with no determination as to the ultimate merits of Amtrak's cross-claim or the City's defenses, statutory or otherwise." (ECF No. 31.)

would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. MEYERS'S MOTION FOR SUMMARY JUDGMENT

Meyers moves for summary judgment arguing that, under either New Jersey or New York law, a commercial property owner has no responsibility for maintenance of the curb abutting the

street. (ECF No. 35-2 at 5.) According to Meyers, it is undisputed that Plaintiff fell as a result of contacting the metal strip along the curb in front of the Subject Building and did not make contact with the concrete flag. Therefore, Meyers argues it is entitled to summary judgment because it has no responsibility to maintain the curb.

Amtrak and Plaintiff both oppose Meyers's motion. (ECF Nos. 41 & 45.) Plaintiff contends "[i]t is for the jury to determine whether the area [where he] was injured was part of the sidewalk and whether the conditions as described by the witnesses . . . were dangerous and a cause of [Plaintiff's] injury." (ECF No. 45-1 at 5.) Similarly, Amtrak points to the 2009 violation issued to Meyers by the City and subsequent April 2012 3-1-1 complaint about the sidewalk in front of the Subject Building. (ECF No. 41 at 6.) Amtrak contends "[t]he 3-1-1 calls and inspection records for the area show that the City had previously found cause to issue a violation to Meyers for the condition of the sidewalk in the area where plaintiff fell" and that violation remained open at the time of the April 2012 3-1-1 call. (*Id*.) Amtrak argues this evidence demonstrates, at a minimum, there is an issue of fact as to the state of repair of the sidewalk. The Court agrees.

Indeed, the alleged defect at the convergence of a property for which Meyers is statutorily responsible (the sidewalk) with the property for with the City ordinarily retains liability (the curb, metal strip, and street) results in potential liability for Meyers under New Jersey or New York law.[3]

---

[3] The Court must apply New Jersey choice of law rules in determining whether New York or New Jersey substantive law governs Plaintiff's claims. *See Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). As such, the Court must partake in a two-step analysis. *Spence-Parker v. Del. River & Bay Auth.*, 656 F. Supp. 2d 488, 497 (D.N.J. 2009). First, the Court must determine whether an "actual conflict" exists between the laws of the potentially interested states pertaining to the dispute at hand. *Id*. (citation omitted). If a conflict between the potentially applicable laws does not exist, the Court is presented with a false conflict and the choice of law "inquiry is over." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). On the other hand, if there is an actual conflict between the states' laws, the Court moves on to the second step of its

Although Plaintiff testified that his accident occurred when he stepped out of his truck and his left foot contacted the metal strip and slipped (ECF No. 35-1, Ex. B at 41:19-0, 42:21 to 43:5), he attributed the cause of his fall to "the wet condition and the breaking of the concrete" and indicated that the concrete at issue was on the sidewalk side of the metal strip (*id*. at 51:23-52:52:3). The City's 2009 inspection report also notes that Meyers was issued violations for two defects west of the light pole, on or about the concrete flag closest to the street, in the approximate location where Plaintiff testified he parked, slipped, and fell. (*Id*. at 33:24-35:12.) There is also expert testimony, albeit contested, alleging Meyers: (1) failed to inspect their sidewalk and curb area (ECF No. 35-17 at 5); (2) "allowed an unsafe and defective sidewalk and curb condition in the area of 252 West 31st Street, Manhattan, NY"; (3) "failed to assess the broken sidewalk condition properly in order to eliminate a dangerous trip-slip and fall situation"; and (4) "failed to properly inspect, maintain, repair and eliminate the dangerous condition as per their duties under the administrative code of the City of New York," among other allegations (*id*. at 12).

The Court finds there is an issue of fact as to whether the defective sidewalk condition (evidenced by open violations issued by the City) in any way caused or contributed to the water accumulations and/or other defects in the curbing that caused or contributed to Plaintiff's fall. Therefore, Meyers's motion for summary judgment must be denied.

Nevertheless, Meyers contends it has no duty to maintain the curb in front of the Subject Property. (ECF No. 35-2 at 15-18.) Relying on *Levin v. Devoe*, 221 N.J. Super. 61, 62 (N.J. Super.

---

analysis. At the second step, the Court must determine "which state has the most meaningful connections with and interests in the transaction and the parties." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995) (citing *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 417 A.2d 488 (1980)). The Court finds there is no conflict between the laws of New Jersey and New York with respect to the obligations of commercial property owners to maintain the sidewalks and curbs abutting their property. In any event, as discussed herein, Meyers may be liable under the laws of either state.

App. Div. 1987), Meyers argues "the duty of a commercial property owner to maintain the abutting sidewalk does not extend to maintaining curbs that are separated from the sidewalk by a grass strip." (*Id*. at 15.) While perhaps true, as Amtrak responds in opposition, "[t]here is no grassy strip between the sidewalk and the curb on 31st Street in Manhattan. Instead, the area has a curb that directly abuts the sidewalk, making the curb structurally integral to the sidewalk and, as recognized by *Levin*, giving rise to potential liability under *Stewart*." (ECF No. 41 at 8 (citing *Stewart v. 104 Wallace Street, Inc.*, 87 N.J. 146, 157 (1981).)

In *Levin*, the court "conclude[d] that except for sidewalks abutting commercial property and for curbs that are structurally an integral part of such sidewalks, *Stewart* similarly left undisturbed the *Yanhko* rule that an abutting property owner is not liable for maintaining the public way, which includes curbs." *Levin*, 221 N.J. Super. at 64. *Stewart* held that a commercial landowner has a duty to maintain its sidewalks and is liable for any pedestrian injured by virtue of its failure to discharge that duty. *Stewart*, 87 N.J. at 157. Thus, New Jersey law would hold a commercial landowner, like Meyers, liable for an injury proximately caused by the failure to maintain the area for which it is responsible, which can extend to an integrated curb and sidewalk flag like the one at issue here. *See id.*; *Cf. Norris v. Borough of Leonia*, 160 N.J. 427, 443-44 (1999).

Meyers's reliance on the New York Administrative Code is similarly misplaced. Section 7-210 of the New York Administrative Code provides that a landowner must maintain the sidewalk abutting its land in a reasonably safe condition and is liable for "any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition." N.Y.A.C. § 7-210(b). Under New York law, Meyers can be liable for an injury on the curb/metal stripping, even if it is not responsible for the maintenance of the

11

curb itself, provided the injury is proximately caused by its failure to adequately maintain the sidewalk for which it is responsible. *See Sangaray v. West River Assocs.*, 26 N.Y.3d 793, 799-800 (2016) (denying West River's motion for summary judgment and holding it needed to show more than plaintiff's fall happened on a sidewalk adjacent to co-defendant Mercado's property and the defect on which he tripped was on Mercado's property, but also demonstrate that its failure to maintain its sidewalk was not a proximate cause of plaintiff's fall). Here, there is sufficient evidence – in the form of 3-1-1 calls, inspection records, photographs and Plaintiff's testimony – to create an issue of fact as to whether Meyers adequately maintained the sidewalk and, if not, whether that failure was a proximate cause of Plaintiff's accident.

Because a reasonable jury could conclude that the sidewalk in front of the Subject Building was not properly maintained by Meyers, and could also find Meyers's failure to maintain the sidewalk was a proximate cause of Plaintiff's accident, Meyers's motion for summary judgment must be **DENIED**.

        **B.**    **THE CITY'S MOTION FOR SUMMARY JUDGMENT**

The City moves for summary judgment dismissing all cross-claims asserted against it. (ECF No. 36.) Meyers and Amtrak oppose the City's motion. (ECF Nos. 40, 42.) The City argues summary judgment should be granted in its favor for the same reason it was dismissed as a direct defendant; *i.e.*, because there was no prior notice to the City of any defect prior to Plaintiff's alleged fall. (ECF No. 36-2 at 3.) The City further argues that 3-1-1 complaints do not constitute prior written notice of a defective condition to the City and it has no obligation to maintain any defect in the sidewalk, which is the responsibility of Meyers to repair and maintain. (*Id*. at 5.) Rather, the City argues it is only responsible for maintaining the curb itself, but there was no defect

in the curb. Therefore, the City argues, the cross-claims for contribution and indemnification must be dismissed. The Court agrees.

"The New York City administrative code 'unequivocally requires that plaintiffs who sue the City for personal injuries allegedly caused by defects or hazardous conditions in municipal streets and sidewalks plead and prove that the City received prior written notice of those defects or conditions." *Rothstein v. City of New York*, 2011 WL 3296205, at *5 (S.D.N.Y. June 15, 2011) (quoting *Mendelsohn v. City of New York*, 2003 WL 22510392 at *2 (S.D.N.Y. Nov. 5, 2003)) (additional citations omitted), report and recommendation adopted by 2011 WL 3273473 (S.D.N.Y. July 29, 2011).[4] Specifically, Section 7-201(c)(2) of the New York City Administrative Code states:

> No civil action shall be maintained against the City for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or where there was previous injury to person or property as a result of the existence of the defective, unsafe, dangerous or obstructed condition, and written notice thereof was given to a city agency, or there was written acknowledgement from the City of the defective, unsafe, dangerous or obstructed condition, and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe.

N.Y.C., N.Y., Admin. Code §7-201(c) (2010).

---

[4] The parties rely on New York law and do not claim that the law of any other forum applies. "[S]uch 'implied consent . . . is sufficient to establish choice of law.'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of [New York law], all are deemed to have consented to its application. No reason of policy warrants a departure from their implied choice-of-law.")). Moreover, this Court finds the prior notice provision of the New York City Administrative Code is a substantive state law under *Erie* and, therefore, must be applied by the Court sitting in diversity. *Accord Schmigel*, 800 F.3d at 120. Accordingly, the Court will apply New York law.

"The purpose of the prior notice provision is to limit the City's liability to those defects or hazardous conditions of which its officials have no notice." *Marceca v. City of New York*, 787 N.Y.S.2d 640, 643 (N.Y. Sup. Ct. Kings Co. 2004) (citing *Poirier v. City of Schenectady*, 85 N.Y.2d 310, 314 (1995)). Moreover, "prior written notice provisions are to be strictly construed." *Id*. (citing *Katz v. City of New York*, 87 N.Y.2d 241, 243 (1995)).[5]

"[A]s a matter of law, neither constructive notice nor written notice of defects near the accident site suffices to fulfill the notice requirement." *Mendelsohn*, 2003 WL 22510392, at *3 (citing *Amabile v. City of Buffalo*, 93 N.Y.2d 471, 475-76 (1999) (holding constructive notice insufficient as a matter of law); *D'Onofrio v City of New York*, 11 N.Y.3d 581, 585 (2008) (explaining that, because the defect shown in the Big Apple map differed from the defect that caused plaintiff's injury, it could not provide prior written notice); *Brill v. City of New York*, 759 N.Y.S.2d 346, 346 (N.Y. App. 2d Dep't 2003) (finding "'Big Apple' map indicating defects in the sidewalk adjacent to the area of the accident" insufficient notice as a matter of law), *rev'd on other grounds*, 2 N.Y.3d 648 (2004); *Belmonte v. Metropolitan Life Ins. Co.*, 759 N.Y.S.2d 38, 40-41 (N.Y. App. 1st Dep't 2003) (notice of a defect parallel to a curb cannot provide notice of a defect which is perpendicular to a curb); and *Fraser v. City of New York*, 640 N.Y.S.2d 607, 607-08 (N.Y. App. 2d Dep't 1996) (repair order indicating holes in a 400-foot-long stretch of roadway insufficient as a matter of law to provide notice of a specific defect)).

---

[5] "The only recognized exceptions to the notice requirement are (1) where a special use confers a special benefit upon the municipality or; (2) [a]n act of affirmative negligence by the municipality caused or created the defect." *Williams v. City of New York*, 907 N.Y.S.2d 105 (N.Y. Sup. Ct., N.Y. Cty. 2010) (citation omitted). "When a plaintiff alleges that the municipality caused or created the defect, the exception is 'limited to work by the City that immediately results in the existence of a dangerous condition." *Rothstein*, 2011 WL 3296205, at *7 (citing *Oboler v. City of New York*, 8 N.Y.3d 888, 889 (2007)). None of these situations are present in this case.

Similarly, "a verbal complaint written down as a telephone message . . . does not satisfy the prior written notice requirement." *Rothstein*, 2011 WL 3296205, at *6 (quoting *Cenname v. Town of Smithtown*, 755 N.Y.S.2d 651, 651 (N.Y. App. 2d Dep't 2002)) (additional citations omitted). Thus, "a citizen complaint made through [the City's] 311 system does not constitute prior written notice . . . [s]ince a verbal or telephonic communication to a municipal body that is reduced to writing cannot satisfy the prior written notice requirement." *Kapilevich v. City of New York*, 960 N.Y.S.2d 39 (N.Y. App. 1st Dep't 2013) (citing *Gorman v. Town of Huntington*, 12 N.Y.3d 275, 280 (2009); and *Batts v. City of New York*, 939 N.Y.S.2d 425 (N.Y. App. 1st Dep't 2012)).

In *Kapilevich*, a pedestrian brought an action against the City to recover for injuries she received when she tripped and fell on a metal vault cover located within a crosswalk. 960 N.Y.S.2d at 39. The trial court granted summary judgment in the City's favor and the Appellate Division affirmed, holding that permits issued by the City and a notice of violation issued to the utility company for failing to comply with permits did not provide the City with prior written notice of a loose vault cover, nor did a citizen's 3-1-1 complaint about the condition. *Id.* at 39-40

Although "a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition is an 'acknowledgement' sufficient to satisfy the Pothole Law," *Bruni v. City of New York*, 2 N.Y.3d 319, 325 (2004), that is not the case here. After receiving the 3-1-1 call on April 10, 2012, DOT employees did not inspect the area around the Subject Building because there was an open violation for the same sidewalk area that had been issued to Meyers on February 17, 2009, after a January 23, 2009 DOT inspection. (ECF No. 36-2 at 4-5.) Notably, the DOT employee did not describe any safety hazard with the curb as a result of his inspection in 2009. (*Id.*) In any event,

15

"[t]he fact that the [City] may have inspected the sidewalk prior to the plaintiff's accident does not obviate the need for prior written notice." *Cenname*, 755 N.Y.S.2d at 651 (citations omitted).

The City has met its burden by submitting the Declarations of Min Yi Chan and Albert Roca (ECF Nos. 36-6, 36-7) showing the DOT searched its records and no prior written notice of the complained-of condition was found. *Kapilevich*, 960 N.Y.S.2d at 39 (citing *Olan v. Farrell Lines*, 64 N.Y.2d 1092, 1093 (1985); *Campisi v. Bronx Water & Sewer Serv.*, 766 N.Y.S.2d 560 (N.Y. App. 1st Dep't 2003)). Because a plaintiff is required to plead there was prior written notice of a dangerous condition, the failure to plead (and, more significantly, to prove) prior written notice requires that the complaint and all cross-claims against the City be dismissed. *See, e.g., Damashek*, 910 N.Y.S.2d at 404.

Accordingly, the City's motion for summary judgment is **GRANTED**.

### C.    AMTRAK'S MOTION FOR SUMMARY JUDGMENT

Amtrak moves for summary judgment arguing it is not liable to Plaintiff under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*. ("FELA"), because he was commuting to work when the alleged incident occurred, and was outside the scope of his employment while traversing a public thoroughfare on his way to work. (ECF No. 37-4 at 7-11.) Amtrak further argues that liability for the alleged hazard lies with third-parties (*i.e.*, Meyers and the City) and, because Plaintiff cannot demonstrate that Amtrak breached any duty owed to him, Plaintiff cannot recover against Amtrak under a negligence theory. Finally, Amtrak argues it is entitled to indemnification from Meyers and/or the City because "if there was a hazard that caused plaintiff's injury, it was on property for which Meyers and/or the City bear legal responsibility." (*Id*. at 16.)

Meyers, the City and Plaintiff all oppose Amtrak's motion. (ECF Nos. 38 to 39, 44.) The City simply incorporates its arguments in support of its motion for summary judgment; *i.e.*, there

was no prior notice of a defective curb. (ECF No. 38.) Meyers and Plaintiff oppose Amtrak's motion arguing, *inter alia*, there exists a genuine dispute of material fact as to whether Plaintiff was within the scope of his employment at the time of the fall. (ECF No. 39 at 8; ECF No. 44 at 6-12.) They further argue that, if the Court determines the curb was in a dangerous condition, there also exist genuine disputes of material fact as to whether Amtrak was negligent. (*Id*.) The Court agrees.

To succeed on his claim against Amtrak, Plaintiff must show: (1) an injury within the scope of his employment; (2) the employment was in furtherance of Amtrak's operations in interstate commerce; (3) Amtrak was negligent; and (4) Amtrak's negligence was a proximate cause of his injury. *See Green v. River Terminal Railway Co.*, 763 F.2d 805, 808 (6th Cir. 1985).

Amtrak argues that, because Plaintiff's work shift on May 20, 2012 was to begin at 3 p.m. at Penn Station, New York and the alleged incident occurred before his work shift began, Plaintiff was commuting at the time of his fall and, therefore, was not within the scope of his employment with the railroad. Amtrak asserts the scope of employment, although broadly construed under FELA to include those tasks that are incident to one's work for the railroad, does not include a commuting employee. (ECF No. 37-4 at 8 (citing *Rostocki v. Consolidated Rail Corp.*, 19 F.2d 104, 106 (2d Cir. 1994) and *Loya v. Denver & Rio Grande Western Rail Co.*, 993 F.2d 1551 (10th Cir. 1993)).

The Court is not convinced that Plaintiff was outside the scope of his employment at the time of his injury merely because his shift had not yet started. On the date of the accident, Plaintiff commuted to work by driving his personal vehicle to the Sunnyside Yard in Queens, New York, where he switched into his assigned Amtrak truck. (ECF No. 35-7 at 24:13-16.) Plaintiff allegedly "conducted a job briefing and completed the required documentation before leaving" the

17

Sunnyside Yard to report to Penn Station to get his tools. (*Id*. at 24:22-25:5, 122:2-123:5; *see also* ECF No. 44 at 3.) Plaintiff drove from the Sunnyside Yard to Penn Station and parked the Amtrak truck on 31st Street in front of the Subject Building. (ECF No. 35-7 at 26:2-16; 33:6-9.) Plaintiff testified that both Amtrak and other authorized vehicles were specifically permitted to park on 31st Street, but the general public was not. (*Id*. at 35-7 26:2-27:2.) Although it is unclear from the record, Amtrak presumably obtained permission from some entity to park its vehicles on 31st Street. Contrary to Amtrak's arguments, these facts suggest Plaintiff was not merely a commuting employee.

"FELA applies not only when an employee is injured while actually engaged in the performance of his railroad duties but also when an employee is traversing the employer's premises and, in some circumstances, premises adjacent to those of his employer on his way to or from work." *Carter v. Union R. Co.*, 438 F.2d 208, 210 (3d Cir. 1971) (citing *Bountiful Brick Co. v. Giles*, 276 U.S. 154 (1928); *Erie R. R. v. Winfield*, 244 U.S. 170 (1917); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173 (1st Cir. 1959); and *Sassaman v. Pennsylvania R. R. Co.*, 144 F.2d 950 (3d Cir. 1944)). In *Carter*, the defendant-railroad entered into an agreement with General Motors whereby the railroad's employees were permitted to park their cars in General Motors' parking lot. *Id*. The plaintiff was injured while walking on a path on the way from the parking lot to work. *Id*. The lot was maintained by General Motors. *Id*. The district court granted the railroad's motion for a directed verdict finding that an employee who was injured while *en route* to his jobsite from a parking lot was not within the course of his employment. *Id*. at 209. The Third Circuit reversed, holding that "FELA imposes upon the employer a non-delegable duty to use reasonable care to furnish his employees a safe place to work . . . and this duty extends beyond its premises and to property which third persons have a primary obligation to maintain." *Id*. at 211 (citations omitted).

As the Third Circuit explained, "this duty includes a responsibility to inspect the third party's property for hazards and to take precautions to protect the employee from possible defects, and is separate and distinct from any negligence that may be attributable to General Motors." *Id*.

Here, Plaintiff was injured after he reported to the Sunnyside Yard, retrieved his assigned Amtrak truck, conducted a job briefing, drove to Penn Station and parked in the area designated for Amtrak and other authorized vehicles. Whether those tasks are incident to Plaintiff's work for the railroad is an issue of fact that cannot be decided on a motion for summary judgment. Moreover, the mere fact that Plaintiff's shift had not yet started does not compel a conclusion that he was not within the scope of his employment. Additionally, as in *Carter*, Amtrak has a "non-delegable duty to use reasonable care to furnish [its] employees a safe place to work . . . and this duty extends beyond its premises and to property which third persons have a primary obligation to maintain." *Carter*, 438 F.2d at 211. This would include the area on 31st Street specifically designated for Amtrak parking.

Because the Court finds there is a genuine issue of material fact as to whether Plaintiff was within the scope of his employment at the time of his injury, Amtrak's motion must be **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Meyers's and Amtrak's Motions for Summary Judgment (ECF Nos. 35 and 37) are **DENIED** and the City's Motion for Summary Judgment (ECF No. 36) is **GRANTED**. An appropriate Order will follow.

**Date: February 27, 2016**                                      */s/ Brian R. Martinotti*
                                                                                            **HON. BRIAN R. MARTINOTTI**
                                                                                            **UNITED STATES DISTRICT JUDGE**